UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, a Delaware corporation doing business in Washington,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF TACOMA, WASHINGTON DEPARTMENT OF PUBLIC UTILITIES, a municipal corporation,<br><br>Defendant. | CASE NO. C18-5390 RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff Indian Harbor Insurance Company's ("Indian Harbor") Motion for Summary Judgment (Dkt. 20) and the City of Tacoma, Washington, Department of Public Utilities' ("Tacoma Utilities") Partial Cross Motion for Summary Judgment (Dkt. 22). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

Plaintiff Indian Harbor filed this case for declaratory relief, seeking an order that it has no duty to defend or indemnify Tacoma Utilities under an insurance policy with respect to a complaint filed against Tacoma Utilities by U.S. Oil & Refining Co. ("U.S. Oil"): *U.S. Oil Refining Co. v. City of Tacoma, Washington Department of Public Utilities*, Pierce County, Washington Superior Court Case number 18-2-07232-2 ("underlying lawsuit"). Dkt. 1. Tacoma Utilities counterclaims for: (1) declaratory relief that Indian Harbor has a duty to defend and indemnify it in the underlying lawsuit, and (2) damages for claims of bad faith and violations of Washington's Consumer Protection Act, RCW 19.86 *et seq*., ("CPA"). Dkt. 13. Indian Harbor

ORDER ON CROSS MOTIONSORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

now moves for summary judgment and Tacoma Utilities moves for partial summary judgment on the duty to defend only. For the reasons provided, Indian Harbor's Motion for Summary Judgment (Dkt. 20) should be denied, in part, denied, without prejudice, in part, and granted, in part, and the City's Partial Motion for Summary Judgment (Dkt. 22) should be granted.

## I. RELEVANT FACTS AND PENDING MOTIONS

### A. THE INSURANCE POLICY AT ISSUE

Indian Harbor issued a Public Officials and Employment Practices Liability Policy, number POI9516127-04, effective December 1, 2015 to December 1, 2016, to Tacoma Utilities ("the policy"). Dkt. 21-3. The policy has a limit of liability of $1.3 million, and has a $200,000 deductible. *Id.* The policy was purchased as part of a comprehensive general liability insurance program. Dkt. 24, at 2. Tacoma Utilities has additional insurance with a $1.5 million dollar self-insured limit (Dkt. 21-5), and so, the policy at issue here was acquired to help fill the $1.5 million insurance coverage gap (Dkt. 25, at 1-2).

During the applicable policy period, an event occurred which Tacoma Utilities asserts triggered coverage under the policy. This event culminated in the underlying lawsuit, and the facts of the event are taken from that case's amended complaint for purposes of this motion alone. No findings here are intended to bind the parties in the underlying suit.

### B. FACTS ALLEGED IN THE UNDERLYING CASE'S AMENDED COMPLAINT

According to the amended complaint in the underlying case, before 2000, U.S. Oil, a company that operates an oil refinery at the Port of Tacoma, Washington, received its power supply from Tacoma Utilities which was "unreliable" and "subject to intermittent and unexpected disruptions." *U.S. Oil Refining Co. v. City of Tacoma, Washington Department of Public Utilities*, Pierce County, Washington Superior Court Case number 18-2-07232-2,

ORDER ON CROSS MOTIONS - 2

Amended Complaint for Damages, (filed in the record here at Dkt. 21-1, further references to this amended complaint will be Dkt. 21-1). The underlying case's amended complaint alleges that:

> A source of consistent and reliable electric power is essential to around the clock operation of the refinery. Proper shutdown and startup of the sophisticated mechanical equipment that drives the refinery's operational processes can take weeks. The machinery at the refinery is particularly sensitive to sudden and unexpected reductions in power or power outages. Any sudden or unexpected reductions in power or power outages can lead to unanticipated shut downs or unstable operations of the refinery. Unanticipated shut downs pose a substantial risk of harm and damage to the refinery's sophisticated equipment and production output.

Dkt. 21-1, at 4. According to the amended complaint, in an effort to secure a more reliable source of power for the refinery, U.S. Oil and Tacoma Utilities entered into a written agreement for Tacoma Utilities to supply power to U.S. Oil through a separate and dedicated substation, the Lincoln Substation, for which U.S. Oil helped pay. Dkt. 21-1, at 2-5. This agreement provided that Tacoma Utilities agreed to "construct, own and operate" the Lincoln Substation and to "promptly notify U.S. Oil when Tacoma [Utilities] scheduled . . . maintenance on any portion of Lincoln Substation . . . " Dkt. 21-1, at 6. The amended complaint in the underlying lawsuit asserts that the other named defendant in the case, ABB, Inc., manufactured components used in the Lincoln Substation. Dkt. 21-1, at 8. (U.S. Oil asserts a products liability claim, under the Washington Product Liability Act, and a negligence claim against ABB, Inc. in the underlying lawsuit. Dkt. 21-1, at 15.)

The amended complaint in the underlying lawsuit asserts that, "[o]n April 28, 2016, without notice and through no fault of U.S. Oil and solely because of Tacoma [Utilities'] actions, the U.S. Oil refinery suffered a complete loss of power, which caused an unanticipated total shutdown of the refinery's operations." Dkt. 21-1, at 7. It maintains that "[d]uring the process

of restoring power, a second outage occurred, causing another complete loss of power to the U.S. Oil refinery." Dkt. 21-1, at 7. The amended complaint asserts that the complete loss of electrical power "caused a refinery-wide emergency shutdown," and "prohibited the refinery from going through the systematic process it follows for planned shutdowns that allows U.S. Oil to minimize emissions," "ensure safe operations," and "protect equipment." Dkt. 21-1, at 8. It asserts that "[b]ecause the April 28, 2016 shutdown was abrupt and unforeseen to U.S. Oil, heavy flaring and equipment damage occurred once the refinery lost power." Dkt. 21-1, at 8. By the time power was restored, more than two hours passed since the initial interruption. Dkt. 21-1, at 8.

The amended complaint in the underlying lawsuit alleges that because "some refinery equipment had been damaged and/or plugged during the unexpected power loss, U.S. Oil did not return to pre-power outage conditions until July 2016," and "production yields did not return to pre-power outage levels." Dkt. 21-1, at 9. It maintains that, "[u]nscheduled shutdowns can not only damage refinery equipment, but also commercial obligations such as purchase and sales agreements which in turn affects profitability." Dkt. 21-1, at 13. It further asserts that:

> U.S. Oil has suffered substantial damages including, but not limited to, lost profits from refinery products that were not able to be produced, costs associated with managing the excess inventory of crude stock that had been purchased on contract but which could not be processed following the outage, and increased costs and fees associated with the interruption of refinery operations. . . U.S. Oil believes . . . that the refinery also suffered some damage to its equipment. The damages suffered by U.S. Oil are described further in the Notice of Claim submitted to the City of Tacoma on or around May 26, 2017.

Dkt. 21-1, at 9. U.S. Oil asserts claims against Tacoma Utilities for breach of contract, breach of implied contract, breach of the covenant of good faith and fair dealing, and negligence. Dkt. 21-1, at 9-14. As it relates to the negligence claim against Tacoma Utilities, U.S. Oil alleges that Tacoma Utilities breached its duty of care by, among other things:

1   A. Failing to provide notice to U.S. Oil about the work taking place at the Lincoln Substation on April 28, 2016 that could result in the loss of power to the U.S. Oil refinery;

B. Failing to take preventative steps to prevent the incident, including reasonable steps to ensure that an employee's attempt to change passwords did not disrupt power service to the entire port;

C. Failing to design, construct, inspect, maintain and operate the sources of power supplying the refinery in a manner to avoid unexpected power failure;

D. Failing to train and supervise employees in order to avoid operational and/or equipment failure; and

E. Failing to design, construct and implement a plan that would ensure the continued provision of electrical power to the U.S Oil refinery in the event that transmission from the Lincoln Substation was lost on April 28, 2016.

Dkt. 21-1, at 14. U.S. Oil asserts that it sustained "damages in an amount to be proven at trial, but no less than $9,127,981." Dkt. 21-1, at 15.

**C. EVENTS AFTER THE POWER OUTAGE AND PENDING MOTIONS**

After the April 28, 2016 power shutdown, U.S. Oil sent a demand letter to Tacoma Utilities on May 26, 2017. Dkt. 21-2. Although no court case had yet been filed, Indian Harbor agreed to defend the claim, subject to a reservation of rights, in a letter dated August 9, 2017. Dkt. 21-2, at 2-10. On April 4, 2018, U.S. Oil filed the underlying lawsuit. Dkt. 23, at 9-23. Indian Harbor filed this case for declaratory relief on May 16, 2018. Dkt. 1.

Parties now file cross motions for summary judgment, and have both filed responses and replies. Dkts. 20, 22, 30, 32, and 33. Their arguments will be considered by claim.

**II.     DISCUSSION**

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. WASHINGTON STATE SUBSTANTIVE LAW APPLIES**

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as is the case here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "'[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts.'" *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)).

### C. GENERAL INSURANCE CONTRACT CONSTRUCTION IN WASHINGTON

In Washington, an insurance policy is construed as a contract and given "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171 (2017), *as modified* (Aug. 16, 2017)(*quoting Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wash.2d 618, 627 (1994)). Every insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy." *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710 (2016). Courts in Washington do not interpret an insurance contract's phrases in isolation and give effect to each provision. *Certification From United States Dist. Court ex rel. W. Dist. of Washington v. GEICO Ins. Co.*, 184 Wn.2d 925, 930 (2016).

"If terms are defined in a policy, then the terms should be interpreted in accordance with that policy definition." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wn.2d 567, 576 (1998). "When an insurance policy defines a term, that definition applies throughout the policy." *Lui*, at 719. "Undefined terms are to be given their plain, ordinary, and popular meaning." *Xia*, at 6. If

language in an insurance contract is susceptible to two different but reasonable interpretations, it is considered "ambiguous." *Lui*, at 712. However, "where the policy language is clear and unambiguous, [a Washington] court will not modify the contract or create ambiguity where none exists." *Xia,* at 6.

### B. BOTH PARTIES' MOTIONS ON THEIR DECLARATORY CLAIMS REGARDING THE DUTY TO DEFEND AND DUTY TO INDEMNFY

Indian Harbor moves for declaratory relief that it has no duty to defend or indemnify Tacoma Utilities in the underlying lawsuit based on the plain language of the policy's exclusion provisions. Dkt. 20. Tacoma Utilities also moves for partial declaratory relief that Indian Harbor does have a duty to defend it in the underlying lawsuit based on the plain language of the policy and under Washington's "efficient proximate cause rule." Dkt. 22.

1. <u>Duty to Defend Generally</u>

In Washington, "the duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 404 (2010)(*internal citation omitted*). The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could conceivably cover allegations in a complaint. *Xia*, at 6 (*internal citations omitted*). "[A]n insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id.* (*citing Am. Best Food*, at 405).

"The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803 (2014). The two exceptions to this rule favor the insured. *Id.* (*internal citations omitted*). "First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt on the duty to defend." *Id.* Second, if

the allegations in the complaint are ambiguous or conflict with facts known to the insurer, "facts outside the complaint may be considered." *Id*. at 803-04. "These extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." *Id*. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, at 413.

    2.  <u>Duty to Defend Under The Policy and the Exclusion's Plain Language</u>

The policy provided that, Indian Harbor "will pay those sums that [Tacoma Utilities] becomes legally obligated to pay as **damages** because of a **wrongful act** (regardless of whether or not such allegations prove to be groundless, false or fraudulent) arising out of the discharge of duties by or on behalf of [Tacoma Utilities] . . ." Dkt. 21-3, at 11 (*emphasis in original*).

As is relevant here, a "**wrongful act**" is defined as "a negligent act, error or omission . . ." Dkt. 21-3, at 21 (*emphasis in original*). "**Damages**," are defined as "those amounts that [Tacoma Utilities] becomes legally obligated to pay for **claim** or **suits** arising out of a **wrongful act** and shall include **claims expenses**. . . " Dkt. 21-3, at 21 (*emphasis in original*).

The insurance policy broadly covers damages from wrongful acts - like "negligent acts or errors or omissions." The amended complaint in the underlying lawsuit claims that employees, on behalf of Tacoma Utilities, acted negligently, breached the contract between the parties, breached an implied contract between the parties, and breached the covenant of good faith and fair dealing when they shut the power off to the refinery without notifying U.S. Oil. Under the plain language of the insurance contract, they allegedly engaged in a "wrongful act" for which Tacoma Utilities may be obligated to pay damages. Accordingly, coverage under the policy is triggered, unless an exclusion applies.

Indian Harbor urges that the policy excluded coverage for damages to property. Under the heading "Exclusions," the policy provided that, "[t]his policy does not apply to: . . . any **damages** based upon or arising out of: . . . physical injury to tangible property, including all resulting loss of use of that property, . . . and loss of use of tangible property that is not physically injured." Dkt. 21-3, at 13-14.

Exclusionary clauses, like the one at issue here, "are to be most strictly construed against the insurer." *Am. Best Food,* at 406.

The amended complaint asserts that the complete loss of electrical power "caused a refinery-wide emergency shutdown," and "prohibited the refinery from going through the systematic process it follows for planned shutdowns that allows U.S. Oil to minimize emissions," "ensure safe operations," and "protect equipment." Dkt. 21-1, at 8. It asserts that "[b]ecause the April 28, 2016 shutdown was abrupt and unforeseen to U.S. Oil, heavy flaring and equipment damage occurred once the refinery lost power." Dkt. 21-1, at 8. The amended complaint in the underlying lawsuit alleges that because "some refinery equipment had been damaged and/or plugged during the unexpected power loss, U.S. Oil did not return to pre-power outage conditions until July 2016," and "production yields did not return to pre-power outage levels." Dkt. 21-1, at 9. It maintains that, "[u]nscheduled shutdowns can not only damage refinery equipment, but also commercial obligations such as purchase and sales agreements which in turn affects profitability." Dkt. 21-1, at 13. It further asserts that:

> U.S. Oil has suffered substantial damages including, but not limited to, lost profits from refinery products that were not able to be produced, costs associated with managing the excess inventory of crude stock that had been purchased on contract but which could not be processed following the outage, and increased costs and fees associated with the interruption of refinery operations. . . U.S. Oil believes . . . that the refinery also suffered some damage to its equipment. The damages suffered by U.S. Oil are described further in the Notice of Claim submitted to the City of Tacoma on or around May 26, 2017.

ORDER ON CROSS MOTIONS - 10

Dkt. 21-1, at 9.

Based on the plain language of the policy, it appears that the exclusion applies to damages related to physical injury to property and loss of use of property: The policy clearly and unambiguously excludes damages arising from "physical injury to tangible property, including all resulting loss of use of that property . . . and loss of use of tangible property that is not physically injured." Dkt. 21-3, at 13-14. "[W]hile exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Lui,* at 712. This ruling is not intended to impact Plaintiff's theory that the policy is the product of mutual mistake or some other reformation theory.

In any event, it is not clear whether other damages are reasonably covered by the complaint. There are reasonable interpretations of the policy that could result in coverage. While the duty to defend "is not triggered by claims that clearly fall outside the policy, *National Sur. Corp. v. Immunex Corp.,* 176 Wn.2d 872, 879 (2013), "if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend," *Am. Best Food*, at 413. The amended complaint is ambiguous as to whether damages covered by the policy are claimed. "[I]f a complaint is ambiguous, a court will construe it liberally in favor of triggering the insurer's duty to defend." *Woo v. Fireman's Fund Ins. Co*., 161 Wn.2d 43, 53 (2007). The litigation in the underlying lawsuit is in its early stages; whether or not U.S. Oil will prevail on its theory of damages covered by this policy is unclear at this time, but it is reasonable that they could prevail, based on the allegations in the amended complaint.

Accordingly, Indian Harbor's motion for summary judgment for a declaration that it has no duty to defend (Dkt. 20) should be denied. Likewise, Tacoma Utilities' cross motion for

summary judgment for a declaration that Indian Harbor has a duty to defend it in the underlying lawsuit (Dkt. 22) should be granted. Because a reasonable interpretation of the plain language of the policy and amended complaint in the underlying lawsuit could result in coverage, and Indian Harbor must defend, the Court need not reach Tacoma Utilities' arguments about whether the efficient proximate cause rule applies to the duty to defend.

### 3. Duty to Indemnify

The duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007) (*internal quotation marks and citations omitted*). "The duty to indemnify exists only if the insurance policy actually covers the insured's liability." *Xia,* at 182.

At this stage in the litigation, it is premature to determine whether U.S. Oil will prevail on damages covered under the policy. This determination will likely not be made until the underlying lawsuit is concluded. *See State Farm Fire & Cas. Co. v. Doucette,* 2016 WL 4793294 (W.D. Wash. Sept. 4, 2016).

Accordingly, Indian Harbor's summary judgment motion for declaratory relief that it has no duty to indemnify Tacoma Utilities should be denied without prejudice.

### D. TACOMA UTILITIES RULE 56 (d) MOTION TO ESTABLISH EVIDENTIARY SUPPORT FOR THE ALTERNATIVE CLAIM FOR REFORMATION OF POLICY

Tacoma Utilities additionally moves for a continuance of Indian Harbor's summary judgment motion, under Rule 56 (d), if the Court is inclined to grant any of the summary judgment motion, in order to allow Tacoma Utilities an opportunity to engage in further discovery based on mutual mistake, for example whether "the policy form at issue was mistakenly issued by Indian Harbor, and therefore should be reformed." Dkt. 22. Indian Harbor opposes the motion.

Under Fed. R. Civ. P. 56 (d):

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Tacoma Utilities' motion to continue the summary judgment motion (Dkt. 22) should be denied. Tacoma Utilities has prevailed herein on its summary judgment motion for declaratory relief that Indian Harbor has a duty to defend. The motion for summary judgment for declaratory relief, that Indian Harbor has a duty to indemnify Tacoma Utilities, was denied without prejudice herein. Tacoma Utilities makes no showing that any of the discovery it seeks is relevant to the counterclaims. It fails to show that, for specified reasons, the motion for summary judgment on its counterclaims for bad faith and for violation of the CPA should be delayed.

### E. INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT ON TACOMA UTILITIES' COUNTERCLAIM FOR THE TORT OF BAD FAITH

Indian Harbor moves for summary judgment on Tacoma Utilities' counterclaim for the tort of bad faith, arguing that it did not commit bad faith by agreeing to provide a defense, while, at the same time, filing a declaratory relief action. Dkt. 20. Indian Harbor asserts that Tacoma Utilities has suffered no harm as a result of its actions. *Id.*

Tacoma Utilities responds, and asserts that it is not making a bad faith counterclaim based on the filing of the declaratory relief action. Dkt. 22. It asserts that it is making a bad faith counterclaim based on the holding in *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const. Inc.,* 161 Wn.2d 903, which provided that when an insurer pursues a declaratory judgment action that might prejudice its insured's tort defense, it acts in bad faith. *Id.* Tacoma Utilities claims that Indian Harbor's position here could prejudice Tacoma Utilities in the lawsuit filed by U.S. Oil

because "[a] finding in this case about the nature, extent, type or cause of the damages at issue in the U.S. Oil case necessarily would harm Tacoma Utilities in the underlying lawsuit by limiting its options to take a contrary position" and "could make U.S. Oil aware of theories of liability or damages claims that it would not have considered but for the filing of this declaratory judgment action." *Id.*

"An insurer acts in bad faith if the refusal to defend was unreasonable, frivolous, or unfounded." *Xia,* at 6 (*internal quotations and citations omitted*). "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash. 2d 751, 761 (2002). "The insurer may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend, but it must avoid seeking adjudication of factual matters disputed in the underlying litigation because advocating a position adverse to its insured's interests would constitute bad faith on its part." *Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 914–15 (2007). "An insurer defending its insured under a reservation of rights has an enhanced obligation of fairness." *Id.,* at 915. Accordingly:

> Fulfilling this enhanced obligation requires the insurer to meet four criteria: (1) thoroughly investigate the claim against the insured, (2) retain competent defense counsel for the insured, (3) fully inform the insured of all developments relevant to his policy coverage and the progress of his lawsuit, and (4) refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*Id.*

Indian Harbor's motion for summary dismissal of the counterclaim for bad faith should be granted and the counterclaim dismissed. Tacoma Utilities has failed to point to any evidence that Indian Harbor has "sought adjudication of factual matters disputed in the underlying litigation."

*Dan Paulson,* at 915.  Aside from the pleadings related to the motions addressed in this order, Indian Harbor has filed the complaint, responded to a routine scheduling motion, and filed a joint status report.  It has taken no position adverse to Tacoma Utilities' interests.  Moreover, there is no allegation, nor any evidence that Indian Harbor failed to properly investigate the claim, retain competent counsel to defend Tacoma Utilities in the underlying lawsuit, or to keep Tacoma Utilities fully informed on policy coverage and the progress of the U.S. Oil law suit.  There is no evidence from which a fact finder could construe that Indian Harbor has engaged in "any action which would demonstrate a greater concern for [its] monetary interest than for [Tacoma Utilities'] financial risk."  No material facts are shown.  The bad faith counterclaim should be dismissed.

### F. INDIAN HARBOR'S MOTION FOR SUMMARY JUDGMENT ON TACOMA UTILITIES' COUNTERCLAIM FOR VIOLATIONS OF CPA

Indian Harbor also moves for dismissal of Tacoma Utilities' counterclaim for violation of the CPA.  Dkt. 20.  Tacoma Utilities opposes the motion.  Dkt. 22.

To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.*, at 786.  A violation of RCW 48.30 constitutes a per se unfair trade practice. *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685, 389 P.3d 476, 483 (2017).  RCW 48.30.090 provides that, "[n]o person shall make, issue, or circulate, or cause to be made, issued or circulated any misrepresentation of the terms of any policy or the benefits or advantages promised thereby."

ORDER ON CROSS MOTIONS - 15

Indian Harbor's motion for summary judgment on Tacoma Utilities' claim for violation of the CPA should be granted. Tacoma Utilities asserts that Indian Harbor violated the first two elements of the CPA claim by misrepresenting the benefits (or the advantage of the benefits) by informing Tacoma Utilities that the policy does not require it to provide a defense or indemnify Tacoma Utilities in the underlying lawsuit. While Washington insurance statutes and regulations prohibit Indian Harbor from "misrepresenting pertinent facts or insurance policy provisions," WAC 284-30-330 (1), they do not require Indian Harbor to accept Tacoma Utilities' view of whether the policy covers the damages at issue here. There is no allegation that Indian Harbor misquoted facts or policy provisions, only that Indian Harbor takes a different view of whether there is actual coverage, while still providing a defense. There is no evidence that Indian Harbor engaged in an "unfair or deceptive act or practice." Further, aside from having to defend this action, at this point Tacoma Utilities failed to show that it suffered an injury that was caused by Indian Harbor's conduct. No material facts are shown. The summary judgment motion to dismiss Tacoma Utilities' CPA counterclaim should be granted and the CPA counterclaim should be dismissed.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff Indian Harbor Insurance Company's Motion for Summary Judgment (Dkt. 20) **IS:**
    - **DENIED** as to claim for declaratory relief that it has no duty to defend Tacoma Utilities in the underlying lawsuit;

- o **DENIED WITHOUT PREJUDICE** as to its claim for declaratory relief that it has no duty to indemnify Tacoma Utilities in the underlying lawsuit; and
- o **GRANTED** as to both Tacoma Utilities' counterclaims for bad faith and violation of the CPA, and those counterclaims **ARE DISMISSED**;
- Defendant Tacoma Utilities' Partial Cross Motion for Summary Judgment (Dkt. 22) **IS:**
  - o **GRANTED** as to its motion for declaratory relief that Indian Harbor has a duty to defend Tacoma Utilities in the underlying lawsuit; and
  - o **DENIED,** on its motion to continue the summary judgment motion under Fed. R. Civ. P. 56 (d).

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 3rd day of December, 2018.

ROBERT J. BRYAN
United States District Judge